UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| MICHAEL MILLER, | Case No.: 3:23-cv-00371-MMD-CSD |
| Plaintiff | **Report & Recommendation of United States Magistrate Judge** |
| v. | Re: ECF Nos. 11, 12 |
| JOHN KEAST, et al., | |
| Defendants | |

This Report and Recommendation is made to the Honorable Miranda M. Du, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR 1B 1-4.

Before the court is Plaintiff's motion for temporary restraining order (TRO) and preliminary injunction (PI). (ECF Nos. 11, 12.) Defendants filed a response. (ECF Nos. 15, 15-1 to 15-7.) No reply brief was filed.

After a thorough review, it is recommended that Plaintiff's motion be denied.

**I. BACKGROUND**

Plaintiff is an inmate in the custody of the Nevada Department of Corrections (NDOC), proceeding pro se with this action pursuant to 42 U.S.C. § 1983. (First Amended Complaint (FAC), ECF No. 5.)

Plaintiff suffered burns to most of his body as a result of a house fire when he was a small child. Before being incarcerated, he received skin grafts and other treatment through UNLV, including the placement of a soft tissue expander near his right hip to expand the soft tissue so the scar contracture could be excised on the right side, but this did not occur, likely because he was subsequently incarcerated. He also suffered from a granuloma on the right eyelid

that required surgery. He alleges that his surgeon had ordered ongoing skin grafts, eyelid reconstruction surgery, removal of the soft tissue expander, and pain management for his burns and related conditions.

The court screened his complaint and allowed him to proceed with a retaliation claim against Dr. Halki based on allegations that Dr. Halki knew about his required treatment but failed to provide it because Plaintiff complained about Dr. Halki working while intoxicated. He was also allowed to proceed with an Eighth Amendment deliberate indifference to serious medical needs claim against Dr. Halki, Director of Nursing Keast, and Hartman (whom he alleges denied his grievance on the issue) regarding the need for skin grafts, eyelid reconstruction surgery, removal of the soft tissue expander, and pain management for his burns and related conditions. (ECF No. 6.)

Plaintiff subsequently filed a motion for temporary restraining order (TRO) and preliminary injunction (PI) seeking an order that he be sent to outside medical facilities for his burns, eye condition, orthopedic and gastric issues to diagnose and treat his conditions. (ECF Nos. 11, 12.)[1]

## II. LEGAL STANDARD

The purpose of a preliminary injunction or temporary restraining order is to preserve the status quo if the balance of equities so heavily favors the moving party that justice requires the court to intervene to secure the positions until the merits of the action are ultimately determined. *University of Texas v. Camenisch*, 451 U.S. 390, 395 (1981).

Injunctions and temporary restraining orders are governed procedurally by Federal Rule of Civil Procedure 65, but case law outlines the substantive requirements a party must satisfy to obtain

---

[1] ECF Nos. 11 and 12 are identical.

an injunction or restraining order. *See Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 319 (1999) ("[T]he general availability of injunctive relief [is] not altered by [Rule 65] and depend[s] on traditional principles of equity jurisdiction.").

A preliminary injunction is an "extraordinary and drastic remedy" that is "never awarded as of right." *Munaf v. Geren*, 553 U.S. 674, 689-90 (2008) (citations omitted). Instead, in every case, the court "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 23 (2008) (internal quotation marks and citation omitted). The instant motion requires that the court determine whether Plaintiff has established the following: (1) he is likely to succeed on the merits; (2) he is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in his favor; and (4) an injunction is in the public interest. *Id.* at 20 (citations omitted).). The Ninth Circuit has held that "serious questions going to the merits and a hardship balance that tips sharply toward the plaintiff can support the issuance of an injunction, assuming the other two elements of the *Winter* test are also met." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1132 (9th Cir. 2011) (citation and quotation marks omitted).

The Prison Litigation Reform Act (PLRA) mandates that prisoner litigants must satisfy additional requirements when seeking preliminary injunctive relief against prison officials. The PLRA provides, in relevant part:

> Preliminary injunctive relief must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm. The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the preliminary relief and shall respect the principles of comity set out in paragraph (1)(B) in tailoring any preliminary relief.

3

18 U.S.C. § 3626(a)(2). Thus, the PLRA limits the court's power to grant preliminary injunctive relief to inmates. *See Gilmore v. People of the State of California*, 220 F.3d 987, 998 (9th Cir. 2000). "Section 3626(a) therefore operates simultaneously to restrict the equity jurisdiction of federal courts and to protect the bargaining power of prison administrators—no longer may courts grant or approve relief that binds prison administrators to do more than the constitutional minimum." *Id.* at 999.

A temporary restraining order is appropriate when irreparable injury may occur before the court can hold a hearing on a motion for preliminary injunction. *See* 11A The Late Charles Alan Wright & Arthur R. Miller, et. al., *Federal Practice and Procedure*, § 2951 (3d ed. 1999). The standard for issuing a temporary restraining order is identical to the standard for a preliminary injunction. *See Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush and Co., Inc.*, 240 F.3d 832, 839 n. 7 (9th Cir. 2001); *see also* 11A The Late Charles Alan Wright & Arthur R. Miller, et. al., *Federal Practice and Procedure*, § 2951 (3d ed. 1999) ("When the opposing party actually receives notice of the application for a restraining order, the procedure that is followed does not differ functionally from that on an application for preliminary injunction and the proceeding is not subject to any special requirements."). A temporary restraining order "should be restricted to serving [its] underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer." *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70,* 415 U.S. 423, 439 (1974).

### III. DISCUSSION

According to the medical records submitted by Defendants in support of their opposition to the motions, Dr. Benson[2] requested a consultation with plastic surgery regarding the tissue

---

[2] Dr. Benson is not a defendant.

expander and the right eye surgery on June 22, 2022, which was approved by the Utilization Review Committee (URC) on June 29, 2022. (ECF No. 15-4 at 2.) A plastic surgery consultation was also requested on July 25, 2022, regarding the eye granuloma which required surgical removal. (ECF No. 15-2 at 3.) There is a notation on August 1, 2022, that the consultation with plastic surgery was previously approved. (ECF No. 15-3 at 2.)

Plaintiff complained of eye pain and difficulty seeing and bleeding in July 2023, and it was noted that the surgical consultation had been approved and was pending scheduling. (ECF No. 15-1 at 2-3.)

Plaintiff eventually saw plastic surgeon Scott Wyrie on January 26, 2024. Dr. Wyrie referred Plaintiff to Dr. Marcus Ko[3] for evaluation and treatment of the large eyelid granuloma. Dr. Wyrie also evaluated the soft tissue expander, which was causing Plaintiff pain, and determined that it was "certainly indicated to remove the expander," but requested imaging be performed before scheduling the surgery. (ECF No. 15-7 at 3-4.)

On July 29, 2024, Dr. Benson requested an urgent consultation with plastic surgeon Dr. John P. Brosius, noting Plaintiff had an eyelid granuloma with symptomatic bleeding that was rapidly growing, as well as the presence of a right flank tissue expander. Dr. Benson indicated Plaintiff was a patient of Dr. Brosius prior to his incarceration and Dr. Brosius had previously agreed to perform the required surgery on the eyelid and right flank tissue expander and to perform the needed skin grafts and contracture repair. (ECF No. 15-6 at 2.)

As of October 2024, there was no indication that some 10 months after the consultation with Dr. Wyrie, and three months after Dr. Benson's request for an *urgent* consultation with Dr.

---

[3] Dr. Ko is an ophthalmologist who performs eye plastic surgery. *See* Eyelid Surgery Reno | Nevada Eye Plastic Surgery (nveyeplasticsurgery.com), last visited July 8, 2025.

Brosius, that anything further occurred with respect to the treatment for Plaintiff's eyelid, removal of the tissue expander, or any further skin grafts or contracture repair. There were no records demonstrating that the imaging requested by Dr. Wyrie occurred, or that Plaintiff was been referred to an ophthalmologist as recommended.

As a result, the court ordered Defendants to provide a declaration from a physician with knowledge of Plaintiff's conditions and treatment regarding the status of the requested referral to Dr. Brosius and the treatment for removal of the tissue expander, surgical removal of the eyelid granuloma, any further skin grafts and contracture repair required, and pain management for Plaintiff's burns. (ECF No. 18.)

On October 31, 2024, Defendants filed a declaration from Dr. Benson, stating that Plaintiff was seen by specialty care providers within the community for his burns (that pre-dated his incarceration). NDOC had an "ongoing request for outside consultation for surgical repair of the eyelid granuloma/eyelid burn eschar," however, none of the providers they contacted were willing to take Plaintiff's case due to its difficulty. NDOC continued to work to identify a plastic surgeon to take his case. According to Dr. Benson, Plaintiff was receiving pain management care from NDOC medical. (ECF No. 19-1.)

The court held a hearing on November 25, 2025, and required Dr. Benson to be present by video. Defendants were also required to submit a status report to include an update on Plaintiff's medical conditions: removal of the tissue expander, surgical removal of the eyelid granuloma, further skin grafts and contracture repair as well as pain management. (ECF No. 20.)

On November 18, 2024, Defendants filed a notice indicating Plaintiff would be transferred to High Desert State Prison (HDSP) for a consultation with Las Vegas Plastic

Surgery[4], and he was pending a CT scan needed before a surgeon can remove the tissue expander, if medically indicated. Any further skin grafts or contracture repair would need to be ordered by the treating physicians or surgeons. Finally, they noted that Plaintiff was taking Cymbalta for pain, Baclofen for muscle spasm, and Meloxicam for pain and as an anti-inflammatory. (ECF Nos. 22, 23-1, 24.)

At the hearing on November 25, 2024, the court ordered Defendants to file a status report by December 30, 2024. (ECF No. 28.) Defendants did so, advising the court that due to a custody issue, Plaintiff was not transported to the medical facility for his scheduled appointment, but it was rescheduled. They filed the date of the new appointment under seal. (ECF Nos. 37, 38.) The court subsequently ordered Defendants to provide a status update concerning the outcome of the appointment and any treatment. (ECF No. 57.)

Defendants filed a status update noting that Plaintiff was seen by a plastic surgeon on January 3, 2025, who agreed to excise the granuloma on his right eye, and that procedure took place on March 13, 2025. Plaintiff was discharged on March 18, 2025. Plaintiff had a follow up appointment on May 5, 2025. He was healing well and reported his vision was significantly improved. The provider noted Plaintiff indicated he would prefer to follow up with the surgeon in seven months when he would be released from prison to discuss removal of the tissue expander or revising the eyelid. (ECF Nos. 58, 59-1 to 59-3.)

In light of this representation to the plastic surgeon, it was unclear whether Plaintiff wished to continue to pursue his motion for injunctive relief, or alternatively, if he wished to withdraw the motion and seek any remaining treatment after his release from prison. As such, the court ordered Plaintiff to file a notice advising the court in this regard, and if he elected to

---

[4] The dates of the scheduled transfer and appointment were filed under seal. (ECF No. 24.)

proceed with his motion for injunctive relief, to specifically identify what relief he is still seeking. (ECF No. 61.)

Plaintiff filed a notice indicating that he intends to proceed with his motion for injunctive relief insofar as he asserts that he is not receiving adequate pain management. (ECF No. 63.)

Insofar as Plaintiff requests relief to include treatment for the eyelid granuloma, his motion should be denied as moot as he has since received this treatment. It is further recommended that Plaintiff's motion for injunctive relief be denied insofar as he sought an order that he receive treatment with respect to the tissue expander, and any further skin grafts or contracture repair as he is not electing to proceed with this aspect of his motion. Plaintiff's motion should also be denied as to his request for treatment for orthopedic and gastric issues as he is not proceeding with those claims in this action. *See Pacific Radiation Oncology, LLC v. Queen's Medical Center*, 810 F.3d 631, 636 (9th Cir. 2015) (in seeking injunctive relief, "there must be a relationship between the injury claimed in the motion for injunctive relief and the conduct asserted in the underlying complaint").

Finally, the court will address Plaintiff's motion insofar as he seeks an order that he provided with pain management. In his motion, Plaintiff states that he suffers from severe pain throughout his body that Defendants are aware of his constant pain, but they refuse to treat him. Plaintiff provides no evidence to support his claims. Nor does he identify *which* of the Defendants is responsible for denying him pain relief, when this occurred, or how the pain management he is receiving is insufficient. Defendants have provided evidence that Plaintiff is receiving several medications for pain, including Cymbalta, Baclofen, and Meloxicam for pain and as an anti-inflammatory, which Plaintiff does not refute. The only exhibits Plaintiff has submitted relate to pain resulting from his eyelid condition, which was addressed in surgery.

8

In sum, Plaintiff has not adequately demonstrated a likelihood of success on an Eighth Amendment claim predicated on inadequate pain management. Nor has he set forth evidence to show he is likely to suffer irreparable harm in the absence of injunctive relief. Therefore, the remainder of his motion for injunctive reliefs should also be denied without prejudice.

### IV. RECOMMENDATION

IT IS HEREBY RECOMMENDED that the District Judge enter an order **DENYING** Plaintiff's motion for injunctive relief (ECF Nos. 11, 12). Insofar as he seeks injunctive relief related to pain management he is receiving at the prison for his burns, the motion should be denied without prejudice.

The parties should be aware of the following:

1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(C), specific written objections to this Report and Recommendation within fourteen days of being served with a copy of the Report and Recommendation. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the district judge. Failure to file a timely objection may waive the right to appeal the district court's order. *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991).

2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of judgment by the district court.

Dated: July 9, 2025

_____
Craig S. Denney
United States Magistrate Judge